Good morning. Our next case is Barry v. Lowe's Home Centers. I don't want to mispronounce your name. Mr. Boggess, is that correct? That's correct. Yes, Your Honor. That is how I pronounce it. Good morning, Your Honors. Would you like me to begin? Yes, please. My name is James Boggess, and I am the attorney for Richard Barry, who is the appellant in this case. And we're asking that you reverse the district court's order granting summary judgment against Barry. The primary basis, if not the entire basis, of the district court's ruling was that Barry knew of the condition on the floor that caused him to fall. And the court seemed to rely entirely on one piece of evidence that I'll talk about that I'll argue is ambiguous and confusing at best, and disregarded other evidence that was unequivocal in indicating that Barry did not know of the condition prior to him falling. The court, the district court in its opinion, stated that Barry knew of the condition of water on the floor because of the written statement that was taken at some point after the accident, of course, after the accident. But the court stated it was immediately after the accident, which is definitely not true because the statement goes on to talk about medical treatment that Barry received after the accident. It's actually dated, the statement is dated 0-13-2017, so I'm not sure what date it was actually taken. Originally, I thought it was January of the following year. At any rate, it was not immediately after the accident. And the statement is, as I said, it's confusing. There are, it's about three pages. The paragraph, the second paragraph is the one that's relevant to where the court inferred that Barry actually knew about the water on the floor. But actually, if you read the statement, if you read that paragraph in its entirety, it's not clear when he, when he's referring to when he says that, I don't want to read the entire paragraph, but he goes on. He begins the paragraph by saying, Manager Bill B requested information of what took place. I stated that I was going towards some flowers that are extremely beautiful. And I unexpectedly, unexpectedly began losing control of my footing, resulting in my footing slipping and no longer contacting the floor under myself. I quickly and uncontrollably fell backwards down toward the floor. I intentionally grabbed the handle of the shopping basket, which I was using with both hands in an attempt to gain some control and at least lessen the impact of the fall. I instead pulled the shopping basket back on myself during the fall. I apologize for causing problems. And this is what's important. I apologize for causing problems. And then in parentheses, I was unaware that the complete floor line was extremely wet with standing water. To me, the floors appear to be just damp. I did not realize how wet the floor line was at that time until I noticed while sitting in the chair provided that my entire backside clothing was completely wet and soaked. I didn't, and this is important, I did not report this observation to the manager. So that's, I believe it's open to interpretation when he's talking about that he, he observed that the floor was damp. He could have meant that he'd seen it was damp prior to falling. He could have also meant that as he's talking to the manager, the floor appeared to be damp. And he's apologizing because he thinks, you know, he caused this commotion and caused this trouble and doesn't realize at that point that there was so much water on the floor that caused him to fall. And that's why I noted that he also indicates in that statement, I did not report this observation to the manager. Go ahead, Judge. Can I ask, does the record show what the flooring was? I mean, if it was unfinished concrete, rough concrete, that's one thing. If we're talking about some kind of artificial, you know, what do you call it? My mother would have called it linoleum. But anyway, so the question is, is there any, any information in this record about what the water was on besides the fact that it was a floor? The only thing in the record, Your Honor, I believe, is the two photographs that were presented as evidence by the appellee, which should indicate what the floor looks like and might answer your question. But I don't think there's an actual description that it's concrete, it's linoleum, etc. It looks to me like it's the garden section of the store, and it looks to me like it was concrete. Okay. You keep emphasizing what Mr. Berry's subjective state of mind was, whether he actually knew or not. My understanding of Texas law might be incorrect, but I thought there are cases from the Texas Supreme Court that says whether a condition is open and obvious to an invitee is not a question of fact. It's an objective determination. And if that's the case, if we determine from the photographs or other evidence in the record, it could be that this is open and obvious as a matter of law. Is that correct? And I'll address that, Your Honor. The court did not find, I don't believe, that it was open and obvious, but relied on the fact that it felt very new of the condition. As far as it being open and obvious, I know the appellee makes that argument and relies on two cases, one of which is a relatively new case from the Supreme Court of Texas, Austin v. Kroger, which can be distinguished from this case. In Austin v. Kroger, it was an employee who was actually mopping up liquid that was oily and had like an oily appearance. It wasn't just water on the floor. I couldn't find any case law stating that just water on the floor in and of itself would be open and obvious, an open and obvious condition. I guess my question is, though, under Texas law, open and obvious is not a fact question. Is that correct? I believe that is correct, and it's just open to interpretation as far as what... There is no case law that says this is open and obvious, this is not open and obvious, if that answers the question. I know that in those cases that have been cited, it was a lot more than just merely water on the floor. And there was another case that was another Kroger case that was in the Fifth Circuit, I believe, where it involved concrete that was discolored and had a different color, and that was a static condition, which would be different from water on the floor. I'm sorry, Hughes versus Kroger. That involved a patch of concrete, which even the plaintiff in that case admitted was easy to see. With regard to your opposition to the motion at the district court, you rely on your client's deposition testimony, is that correct? That is correct, Your Honor, and I was about to address that. Are you arguing that the material dispute of fact is... I should say, aren't you arguing that the material dispute of fact is between your client's post-incident statement, which we've already referred to, and his deposition testimony? That is correct, Your Honor, that's exactly what I'm arguing, that there were two pieces of evidence here, one of which was weighed very heavily by the court, and the other, which I don't think was addressed by the court at all, which was that sworn deposition testimony. Well, can the court rely on a dispute of fact that's created by the party itself, the plaintiff himself? In other words, two inconsistent statements, can the court find a disputed fact simply based upon the plaintiff's own either unclear or contradictory testimony? Well, it would seem to me that at that point it would be a question for the fact finder, either the judge, I think it would be a bench trial, or the jury to decide which to put more weight on. You've got two statements, and again, one of which is ambiguous and open to interpretation, and then you've got the sworn testimony where he's asked, quite simply, were you aware of the water prior to falling? And the answer was no. And he also stated in his testimony that, and it was never addressed, I wish I had addressed, it was never addressed the size of this garden department of the store, but Barry did testify that he'd been there many times. He knew that they watered sometimes because they've got plants and flowers. He'd never seen water on the floor because you can water plants without getting water on the floor. And on this particular day, he did not, and it's really important, he did not see them watering in the area where he fell. So he had no reason to believe that there was water on the floor. And again, he stated unequivocally he did not see any water on the floor before he fell. And that, really, I think it's simply, the entire case and the ruling hinged on that, the court relying on what it thought, what the court thought that Barry knew, which simply, I respectfully would say it was incorrect that he didn't, the evidence demonstrates he did not know about the water on the floor. And that's why we're asking that you reverse. What is the evidence about how large an area was covered with water? Is that in the record? The evidence is solely that you've got the two photographs, which I believe it's hard to really see, in my opinion, how much water is there. It looks like there's sunlight on the ground, it kind of reflects, it's difficult for me to see. And then there's Barry's testimony that his clothes were soaking wet once he was sitting in the chair that they provided to him, which would indicate that it was at least a significant enough amount that it would soak his clothes. But there's no, you know, there are no measurements or anything like that, just those photographs and his testimony. And your honors, I intended to keep my argument brief. I don't, I'd be happy to address, I've already addressed the open and obvious issue. I'd be happy to address causation if you'd like. I'm open to any other questions. But beyond that, that includes my main argument to you. I appreciate it. You've saved some time for rebuttal. Thank you. Miss, I don't want to mispronounce your name. Is it Okon? Yes, Melanie Okon. Okay, thank you. You may please the court. I'm Melanie Kemp Okon, and I'm here representing Lowe's Home Centers LLP, the appellee. I'd like to start by pointing out, as this court probably already knows, there's several Fifth Circuit cases that say the court can affirm on any basis that was argued, that was pleaded and briefed to the district court, and not just on one issue that the court may have focused on in the opinion. And we believe there's a number of reasons that the district court's opinion should be affirmed. Just to give a roadmap, we think that the reasons that this should be affirmed are because the summary judgment evidence establishes a matter of law that the appellant did know of the water on the floor, did realize it was there. Second, we believe the evidence as a matter of law showed that he appreciated the risk that the water would be on the floor. Third, we do believe that the water on the floor was open and obvious. Fourth, we believe the evidence showed that the water did not present an unreasonably dangerous condition. And then lastly, we briefed in the trial court in the motion for summary judgment briefing that there was no evidence that the fall causes injuries. And we also think that's another basis to affirm the trial court's judgment. I'll go ahead and talk about the open and obvious issue first, unless the court would like me to talk about something else. There are two photos in the record. They're located at the record on a bill 173 and 174. I believe the court has both the paper copies of those photos and also the electronic copies. I believe even in the paper copies, it's very clear to see you can see the water on the floor. It does appear to be a concrete floor. And when you look at the electronic photos, you can see it even clearer than on the paper photographs once they're printed off. And so we believe that those photographs provide evidence that this was an open and obvious condition. And Texas case law is clear that there's no duty for a landowner to warn of a condition that's open and obvious. In addition, further evidence in the record that the condition was open and obvious is that Mr. Berry's own statement. So there's, as you've heard, there's argument on both sides about what that statement means and whether or not it's ambiguous. But even if you were to read the statement by the interpretation that the appellate wants to give it, then what he's saying is when he's sitting there, now he can see that it's not just damp, it's a lot of water. So his own statement, regardless of the timing of when he makes that observation, is evidence that the condition was open and obvious. Next, I'll go ahead and just address whether or not the evidence conclusively showed that the appellant did in fact know there was water in the lane before he entered it. Because we think that the evidence is conclusive on that. I want to start by pointing out, we believe that there is a disconnect between what was argued to the district court and the evidence that was presented to the district court. And now the arguments that are being made in the Court of Appeals and the evidence that's being relied on in the Court of Appeals. So, during the summary judgment phase, Lowe's put on summary judgment evidence, first starting with Mr. Berry's deposition testimony that he visited this lawn and garden area all the time. He testified that he generally knew that they watered in the lawn and garden area before that day in question. And he also testified that he saw Lowe's employees watering in that lawn and garden area on the morning of the incident. However, he says not in the exact area where he fell. Next, we have the written statement of Mr. Berry, which Mr. Boggess read to you all. It's our contention that there's only one reasonable reading of that statement. And part of what we rely on is the wording he uses. He says, I was unaware that the complete floor was extremely wet with standing water. To me, the floors appear to be just damp. I did not realize how wet the floor was at that time until I noticed while sitting in the chair, provided that my entire backside clothing was completely wet and soaked. And so, we believe the way that that is worded only leads to one reasonable interpretation. And that's, he's talking about what he perceived prior to his fall and what he perceived after his fall. So, that was the evidence that Lowe's put on at the summary judgment phase in the district court. In response to that in the summary judgment briefing, appellant did not even address the written statement. He much less tried to proffer some alternative interpretation of the statement. He never references the written statement at all in his response to the motion for summary judgment. So, this is all new argument in the court of appeals that somehow the district court misread that statement or it could have been interpreted differently. And so, it's one of our contentions that that argument's weighed because we don't believe you can bring up new theories or new issues on appeal that you didn't present to the trial court. So, that's one issue. So, second, the evidence that appellant relied on in the motion for summary judgment briefing in the district court is different now than the evidence that's being relied on in this court of appeals. It's all in the record, but I want to kind of point this out. In the summary judgment phase in the trial court, appellant, and this is at the record on appeal 196, he said he relied on his deposition, page 87, line 23 through page 8813. And what that whole exchange is, it says, and you were aware of that prior to falling, correct? Answer, no, ma'am, I was not aware that where I fell at, I was not aware that they were watering in that area. Question, and I just want to make sure we're communicating correctly. Answer, yes, ma'am. Question, at the time you fell, you didn't know at that time they were watering in that area, correct? Answer, that is correct. Question, but you had seen them prior to falling. Answer, yes, ma'am. I'm sorry if I appear to be difficult. So that side of testimony in the district court only shows that he didn't actually see them watering in that area. It doesn't establish that he didn't actually know there was water there from before he got there. The other thing that they cite in the motion for summary judgment response is the record on appeal 197. And it is citing his deposition, page 44, line 24 through page 45, line 5. And when you read that portion, it's all about his cane. It has nothing to do with whether or not he saw or perceived water in the lane. So during the motion for summary judgment briefing, they did not present any evidence in support of their claim that he did not see the water other than those two portions. Now, they did cite page 51 through 9 of his deposition, which is the part they're relying on now in this court of appeals to try to create a fact issue. But in the district court, they didn't cite that for the proposition that he didn't see the water. Instead, they cite that for the proposition that, and I'm quoting, it is an unreasonable risk of harm to have water on the floor of a store, particularly in such a large amount, that it would soak someone's clothing after they fall and land in it, end quote. Now, while that may seem like a technicality, what I'm arguing, I really don't believe it is. Because in practicality, when a district court is ruling on a motion for summary judgment, I believe that when the court kind of focuses in on an issue where they believe the evidence is conclusive, then they will go to the appellant's brief and see what evidence is cited, and then they will go to the appellee's brief and see what evidence is cited, and then make that determination. And there's no requirement that the district court go through the entire record or look at evidence cited for other propositions to determine that issue. And so we don't think it's proper to now in the court of appeals cite to different evidence than they were citing to the trial court for that reason. Regardless, even if that evidence is considered, we still don't believe that creates a genuine issue of material fact. All of the case law says you have to look at the totality of the evidence and see whether reasonable minds would differ in coming to a conclusion. Here, between his written statements, the photos, the fact that he admits he saw them watering in another portion of the lawn and garden area that day, we believe that the evidence conclusively shows that he actually knew of the water or at least appreciated the risk. And the Kilcrest case that we cite talks about you don't have to actually know it's there if you know that it's likely to be there. And so we think that that's very applicable to this case as well. Moreover, we think that his deposition testimony that is cited now can't create a genuine issue of material fact because we don't believe it rises to more than a scintilla of evidence. And there's case law out of the Fifth Circuit where the Fifth Circuit has, on several occasions, chose to disregard self-serving testimony given by a party when it's in contradiction to the other evidence, and the court doesn't believe that it raises a genuine issue of material fact. And so we believe that applies here. Next, I want to talk about causation. In the motion for summary judgment in the trial court, we specifically raised the issue that there was no evidence that the fall caused the injuries of which Mr. Baird was complaining. The evidence shows that there were many pre-existing injuries, prior back surgeries, carpal tunnel, diabetes. He was already walking with a cane at the time of the incident. And under the applicable case law, you are required to have medical testimony saying that within a reasonable medical probability, the incident caused the injuries. The only evidence that was cited in the appellant's response to our motion for summary judgment on that point was page 128 of his deposition, or not of his deposition, of Dr. Ince's deposition. That was one of the doctors that was deposed. So it was four lines of testimony. And here's what it said. Question, now I want to ask you, doctor, were the injuries that, I'm sorry, was the condition that you diagnosed of Mr. Baird, was it consistent with injuries sustained in a fall? And the answer is yes. So the only evidence in the record at all regarding causation is one doctor saying that they were consistent with a fall. And there's multiple cases that say that is not sufficient evidence of causation. I want to cite you to Smith versus Landry's Crab Shack, which is a Texas Court of Appeals case out of Houston. In that case, the doctor testified, it was a case about food poisoning, essentially. And the doctor testified that none of the circumstances of the plaintiff's illness or treatment were inconsistent with a diagnosis of gastroenteritis. That it can be caused by bacteria in food. That many foods can be a carrier for such bacteria. That different bacteria have different incubation periods before a person begins to experience symptoms. That starting to experience symptoms within five hours of a meal and getting sick enough to be admitted to a hospital within about 10 hours of a meal would be in reasonable medical probability be consistent with foodborne food poisoning. And then the most common time period in which symptoms of foodborne gastroenteritis normally manifests is within 24 hours. And it can be as fast as a couple hours. And although it was possible that the plaintiff had food poisoning from some other source, that food poisoning was more likely that she had food poisoning considering that it was more likely that she had gotten it from this restaurant. And even in that case, the Court of Appeals found that was insufficient evidence of causation. Because there was no statement by a doctor that within a reasonable medical probability, the condition was actually caused by eating the food at the restaurant. Here we have way less than that. Here all we have is that the injuries could be consistent with a fall. And so we think on that point also, the trial court's judgment should be affirmed. So, unless there are any questions, I will rest on the brief. Thank you, counsel. Thank you. Mr. Boggess. Thank you, Your Honor. I'll address three issues that Ms. Oken raised in her argument. Number one, and I'll basically do it chronologically. She argued that we did not argue to the court, to the district court, in our response to the motion for summary judgment, that Barry did not see the water. I did make that argument. I drafted that response. And I did argue to the court that he did not see the water. I did cite the record from his deposition where Barry stated that he did not see the water prior to falling. So the court had that and it was able to consider that. It just appears not to have considered it. Next, I will address the Kilchrist case that was cited by the appellee and also by the district court. Easily distinguishable from this case. In the Kilchrist case, it involved a worker, I think a truck driver, who worked in this vicinity where he fell. There was water on the floor all the time. They had to wear special shoes. There was also some sort of chemical that was often on the floor that made it slippery. And they were told that the floor is slippery. Completely different from these facts where we've got a store that's open to customers of all walks of life, some with disabilities. And obviously nobody is required to wear special shoes or anything. This floor is not supposed to be slippery. And so I think it's easily distinguishable. And then finally, I will address causation, even though the district court did not address it at all. It just didn't get to that. But the case that was cited in the brief of the appellee, Guevara versus Ferrer. The court did state that some of the bills that were presented, that I guess the jury had awarded, should have been proven by an expert. But not all. And the court did not remove, it upheld the longstanding position that a layperson with common knowledge and experience can make the connection between an event and injuries. Which, for example, a car accident causing back injuries. And in this case, a slip and fall accident causing injuries. Now they could perhaps argue at trial that some conditions might not be established without sufficient expert opinion, but certainly not all of the damages. So for that reason, we'd ask that the summary judgment not be upheld by that issue alone. And I'd be happy to address any other questions the court might have, but other than that, I believe that's all I've got, Your Honors. Thank you. We have your arguments. We appreciate it. Thank you. Thank you.